PAULINE C. CAPPS, Administratrix of the Estate of WILLIAM JUNIOR CAPPS II, Deceased v. BRENDA MONNETT DILLARD and GWYN AUSTIN DILLARD

No. 7118SC387

(Filed 23 June 1971)

Automobiles § 63— automobile collision with three-year-old child — sufficiency of evidence

Plaintiff's testimony that, when defendant's automobile was four or five car lengths from her three-year-old son, the child was standing in the street, his back against a parked car, and that the child started walking toward the center of the street and was fatally struck by defendant's car, *held* sufficient to support a jury finding of defendant's negligence in striking the child.

APPEAL by plaintiff from *May, S.J.,* 7 December 1970 Session of Superior Court held in GUILFORD County.

This is a civil action to recover damages for the wrongful death of a three-year-old child. At the close of plaintiff's evidence defendants' motion for a directed verdict was allowed. Plaintiff appealed.

*Smith and Patterson by Norman B. Smith and Michael K. Curtis for plaintiff appellant.*

*Perry C. Henson and Thomas C. Duncan for defendant appellees.*

VAUGHN, Judge.

The only question presented by this appeal is whether, when all evidence which supports the plaintiff's claim is taken as true and considered in the light most favorable to the plaintiff, giving the plaintiff the benefit of every reasonable inference which may be drawn therefrom, and with all contradictions, conflicts and inconsistencies resolved in plaintiff's favor, there was suf-

Capps v. Dillard

ficient evidence to survive defendants' motion for a directed verdict.

It was stipulated that the child died as a result of an accident with defendants' automobile which occurred at 2:55 p.m. on 16 October 1965 in a residential area within the city of Greensboro and that the road at the scene was straight, level and dry.

Plaintiff offered evidence from which the jury could have found the following. Plaintiff's intestate lived with his family on the south side of Florida Street in an apartment complex known as Smith Homes. The street runs in a general east-west direction and is straight for several blocks. Several vehicles were lawfully parked on the north side of the street. No parking is permitted on the south side of the street. Two lanes separated by a white line are provided for travel along the street. The child had been playing with his pedal car. Intending to leave for the grocery store, the child's father took the pedal car and the child inside the apartment. After a short interval the father observed that the child was no longer in the apartment and went to look for him. When he got to the door or steps he observed the child standing in the street between the south side of the street and an automobile which was parked on the north side. The child had his back to the parked car and was standing against the car between the door and left front wheel facing south towards the apartment. The father walked approximately nine feet to the curb and looked to his left and right for traffic. He noticed defendants' automobile coming from the east proceeding in a westerly direction. The defendants' car was some four or five car lengths east of the child. The father testified:

" . . . I told the child to stand where he was. I didn't go across the street because I didn't think I had time to get across.

"After I observed the car coming and saw my son standing there and instructed him to stand still then, he walked toward midway of the street. That is when the car struck him and I don't remember much after that.

"After the car hit the child it rolled on up the street. I believe the left wheel passed over the stomach section of the child."

After defendants' vehicle struck the child, it continued west-wardly along Florida Street. People began to scream. Some man ran along side the car screaming for the defendant to stop. Defendant then reversed her direction and started backing up the street. After backing for some distance, the vehicle finally stopped some 100 feet from where the child's body lay. Mrs. Lennins, a witness for plaintiff, testified that she was inside her apartment on the north side of the street when she "heard a compact [sic], a loud noise." She heard people screaming. She left her apartment and walked into the street and placed her hand on the hood of defendants' car. "I hollered to the lady, 'Please stop.' Mrs. Dillard was driving the car. The car was moving backwards." Mrs. Lennins testified that the defend-ant " . . . looked pretty wild to me because her face was pretty flushed and her hair was fuzzy." After defendant got out of her car she "flopped" over on the ground. A strong odor of some alcoholic beverage was detected on the defendant.

The evidence in this case would permit the jury to find that the child was standing in the street in such a position and for such a length of time as to put a reasonably careful motorist on notice of his presence. Having notice of the presence of the child in the street, the defendant had the duty to anticipate that the child might attempt to cross in front of her approaching vehicle. Duties of a motorist upon observing a child on or near a highway are well established:

> "It has been repeatedly declared by this Court that a legal duty rests upon a motorist to exercise due care to avoid injuring children whom he sees, or by the exercise of reasonable care should see, on or near the highway. [Omitting citations.]

> "A motorist must recognize that children have less judgment and capacity to appreciate and avoid danger than adults, and that children are entitled to a care in proportion to their incapacity to foresee, to appreciate and to avoid peril. [Omitting citations.]

> "In *Sparks v. Willis, supra,* Devin, J., said for the Court: 'It has been frequently declared by this Court to be the duty of one driving a motor vehicle on a public street who sees, or by the exercise of due care should see, a child on the traveled portion of the street or apparently intend-

ing to cross, to use proper care with respect to speed and control of his vehicle, the maintenance of vigilant lookout and the giving of timely warning to avoid injury, recognizing the likelihood of the child's running across the street in obedience to childish impulses and without circumspection.'

"In a particular situation due care may require a motorist to anticipate that a child of tender years, whom he sees on the highway, will attempt to cross in front of an approaching automobile, unmindful of danger." *Pope v. Patterson,* 243 N.C. 425, 90 S.E. 2d 706.

We hold that plaintiff's evidence was sufficient to permit but not compel the jury to find that defendant failed to exercise the degree of care which an ordinarily prudent person would exercise under similar circumstances and that such failure was a proximate cause of the accident which resulted in the death of plaintiff's intestate.

Reversed.

Chief Judge MALLARD and Judge PARKER concur.